UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEVEN BONNELL | ) |
| | ) CASE NO. |
| Plaintiff | ) |
| | ) |
| v. | ) March 9, 2010 |
| | ) |
| TITEFLEX CORPORATION, TITEFLEX | ) |
| CORPORATION SEVERANCE PAY POLICY | ) |
| FLEXIBLE TECHNOLOGIES, INC. | ) |
| FLEXIBLE TECHNOLOGIES SEVERANCE | ) |
| PAY PLAN | ) |
| SMITHS GROUP AMERICAS, LLC | ) |
| SMITHS GROUP NORTH AMERICA, INC. | ) |
| SMITHS GROUP NORTH AMERICA, INC. | ) |
| SEVERANCE PAY PLAN (AND | ) |
| SUCCESSORS) | ) |
| | |
| Defendants | |

## COMPLAINT

**INTRODUCTION**

1.      The Plaintiff, Steven Bonnell ("Bonnell") brings this action, pursuant to the

Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.,

("ERISA"), relating to certain vested benefits owing to Bonnell by virtue of the

Severance Pay Plan and/or Policy maintained and administered by defendants Titeflex

Corporation, Flexible Technologies Inc., Smiths Group North America, Inc., and Smiths

Group Americas LLC (collectively, the "Company Defendants").   Moreover, in the

alternative, Bonnell is seeking damages for supplemental state law claims for promises

and negligent misrepresentations made to him.  Bonnell is seeking economic damages

and declaratory judgment.

**JURISDICTION AND VENUE**

2.     This Court has jurisdiction of this action pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. §1331 and 28 U.S.C. § 1367.

3.     This Court has venue of this action pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. §1391.

**III. PARTIES**

4.     The Plaintiff, Steven Bonnell, is a resident of Avon, Connecticut.

5.     The Defendant, Titeflex Corporation, is a Connecticut corporation, with its principal place of business in Springfield, Massachusetts.    The Defendant has a severance pay policy, which is also named as a Defendant.

6.     The Defendant, Flexible Technologies, Inc., is a Delaware corporation, with its principal place of business in Abbeville, South Carolina.   The Defendant has a severance pay plan, which is also named as a Defendant.

7.     The Defendant, Smiths Group Americas LLC, is a Delaware Limited Liability Corporation, with its principal place of business in Malvern, Pennsylvania.  The Defendant Smiths Group North Americas, Inc. is a Delaware Corporation with principal place of business in Malvern, Pennsylvania.  They have a severance pay plan known as Smiths Group North Americas, Inc. Severance Pay Plan (and its successors), which are also named as a Defendant.

8.     Collectively, the company defendants are referred to as "Company Defendants", while collectively, the severance pay plan defendants are referred to as "Plan Defendants".

9.    Upon information and belief, the Company Defendants are run as a single corporate entity by Smiths Group Americas LLC, with corporate identities used only for tax and accounting purposes.  For example, although Mr. Bonnell was hired into the Titeflex Commercial Division, his offer letter was from Smiths.

### IV. STATEMENT OF FACTS

10.    In or around 2005, Bonnell and the Company Defendants entered into discussions regarding hiring Bonnell as an employee.

11.    At the time, the lead person for the Company Defendants for all negotiations and discussing regarding Bonnell's hiring were handled by Robert Burns, President of Smiths Tubular, part of Smiths Group North America, Inc.

12.    During the hiring discussions, Bonnell indicated that he was leery about leaving his current job without some assurances that the Company Defendants would provide him with ample notice of any layoff or termination in addition to any severance obligations.

13.    In those discussions, the Company Defendants (through Burns) agreed to provide a "pay in lieu of notice" provision in an offer letter to Bonnell.

14.    The purpose of the provision, as understood by both Bonnell and Burns was to provide Mr. Bonnell six months notice of an employment termination (absent just cause) or, at the company's discretion, pay in lieu of such notice for the same six month period.

15.    As part of these discussions and offer, Burns and the Company Defendants required that Bonnell provide six months of notice of his intent to resign or retire from the company to give the company time to prepare for any transition.

-3-

16.    The "mutuality" of this provision was understood by all parties to be separate and apart from any severance obligations.

17.    In drafting and preparing such language in the offer letter, the parties agreed that it was not intended to be an exclusive defined benefit, but rather a floor to establish in case the company should decide to terminate his employment and an added benefit because of Bonnell's circumstances.

18.    At all times, Burns intended and it was understand that the language of the offer letter would not prohibit Bonnell from participating in any severance pay plans that the Company Defendants may offer, that may apply to Bonnell.

19.    Indeed, it was Burns' intention that by drafting a "pay in lieu of notice" provision – instead of a severance provision – that Bonnell would still receive severance benefits, even though it could appear to provide Bonnell with a "windfall".

20.    Through Burns' representations, the Company Defendants promised that the offer letter would not prohibit Bonnell from participating in the severance pay plans of the Company Defendants.

21.    Thus, in or around March 13, 2005, the Company Defendants provided Bonnell with an offer letter of employment to employ him as General Manager of the Titeflex Commercial Division.  The letter was signed by Robert Burns and was labeled as from "Smiths". Burns also indicated in the letter that he was pleased to extend the terms of "our offer" to you.

22.    The offer letter provided that Bonnell would report directly to Burns in his position as President of Smiths Tubular Systems.

23.    The offer letter provided that Bonnell would be eligible to participate in the Smiths Group Incentive Plan.

24.    The offer also provided that Bonnell would be eligible for a car, in accordance with Smith Tubular Systems policies.

25.    In addition, the offer letter stated that Bonnell was eligible to participate in any "normal" employee benefit offered by the Titeflex Corporation.

26.    The offer letter also provided that "In the event of your intention to resign or retire, the company will require six months written notice from you.  You will be entitled to receive six months written notice from the company or base salary in lieu of thereof, except if termination is for cause...."

27.    Based on the discussions with Burns and the promises the Company Defendants made therein, Bonnell signed the offer letter on or about March 18, 2005.

28.    This is not the first instance in which the terms of an employee's offer letter by the Company Defendants varied from a standard letter. Indeed, Burns' offer letter with the company has similar language to that which was used for Bonnell.  In Burns' case, the company offered him severance benefits that took into account what was promised to him in the offer letter.

29.    Bonnell's offer letter is not an employment contract.

30.    Bonnell's offer letter does not contain any severance pay provision.

31.    Bonnell met or exceeded the job requirements from 2005 through 2008.

32.    In recognition of his superior performance, in mid-2007, the Company Defendants promoted Bonnell to Vice President and General Manager of Distribution.

In that role, he reported to Mitch Rogers, President of Flexible Solutions, a non-legal entity of Smiths Group North America, Inc.

33.   As a result of the promotion, the Company Defendants treated Bonnell as a "Senior Staff Member" or Vice President as those terms are used internally.

34.   In June 2007, Bonnell received a performance review from Smiths Tubular Systems which indicated that he had a new position and in which his prior location and business "does not exist" any further. Bonnell understood that he was working for the Company Defendants.

35.   In October 2008, Bonnell received a performance review from Rogers. It utilized a Smiths form and title, and stated that Bonnell is part of Smiths Tubular Systems business, and in the General Management Department. The review indicates that Bonnell consistently met all expectations for the position.

36.   Bonnell received an employee badge for "Flexible Technologies Inc."

37.   Bonnell continued to perform the Vice President position at or above the expectations for the position until his employment was terminated on or about May 26, 2009.

38.   Shortly thereafter, Andrew Foy, then Vice President for Human Resources for Smiths Group sent Bonnell a letter (on Smiths letterhead) confirming Bonnell's termination.

39.   Foy's letter indicated that "in accordance with the terms of your employment letter, the Company will provide you with six months base salary continuation , less applicable taxes, in lieu of notice."

40.    The letter also agreed to provide an enhanced separation benefit in exchange for a release of claims.

41.    The termination letter did not state that Bonnell was not eligible to participate in any severance pay plan. Indeed, the termination letter – consistent with the offer letter – provided that Bonnell was to receive "salary continuation" upon his termination, not severance.

42.    Bonnell was not terminated for cause or for performance-related reasons, rather Bonnell's employment was terminated as part of overall plans of a reduction in force at the Company Defendants.

### SEVERANCE PAY PLANS AND POLICIES

43.    Titeflex Corporation purports to have a Separation Pay Policy effective May 30, 2003 and allegedly still in effect in 2009.

44.    The Titeflex policy states that it is designed to 'provide separation benefits to certain employees who sustain unemployment solely and directly as a result of a Reduction in Force." The policy states that it is "unfounded [sic], has no trustee, and is administered by the Plan Administrator."

45.    Under the coverage section, it states that the policy "covers all regular, active, full-time salaried and hourly employees, other than those subject to a collective bargaining agreement or those who have an individual employment contract that contains a severance pay provision."

46.    Under the eligibility section, it provides that an employee is eligible if their employment is terminated involuntarily pursuant to a reduction in force and if the employee signs a release and waiver.

-7-

47.     The Titeflex policy provides that Senior Staff Members (also known as Vice Presidents and Department Heads) shall receive a minimum severance benefit of twenty-six weeks base bay.

48.     The Policy states it purports to provide certain rights and protections under the Employee Retirement Income Security Act of 1974 ("ERISA").

49.     Flexible Technologies, Inc. purports to have a Separation Pay Plan effective January 1, 2005 and allegedly still in effect in 2009.

50.     The Flexible Plan states that it is designed to "provide separation benefits to certain Employees who sustain unemployment solely and directly as a result of a Reduction in Force." The Plan states that the purpose of the plan is to recognize the service that "certain employees have performed for the Company and to alleviate some of the financial hardship that these eligible employees may experience.  The Plan states that it is "unfunded, has no trustee, and is administered by the Plan Administrator." The Plan also states that it is intended to be a employee welfare benefit plan" within the meaning of ERISA.

51.     Under the coverage section, it states that the plan "covers all regular, active, full-time salaried employees...other than those subject to a collective bargaining agreement or those who have an individual employment contract that contains a severance pay provision."

52.     Under the eligibility section, it provides that an employee is eligible if their employment is terminated involuntarily pursuant to a reduction in force and if the employee signs a release and waiver.

53.    The plan provides that Vice Presidents and Department Heads shall receive a minimum severance benefit of twenty-six weeks base bay.

54.    The plans states it purports to provide certain rights and protections under the Employee Retirement Income Security Act of 1974 ("ERISA").

55.    Smiths Group North America Inc. and its successors purport to have a Separation Pay Plan effective May 30, 2003 and effective at the time of Bonnell's termination.

56.    The Smiths Plan states that it is designed to "provide severance benefits to certain Employees who sustain unemployment solely and directly as a result of a Reduction in force.  The Plan states that the purpose of the plan is to recognize the service that "certain employees have performed for the Company and to alleviate some of the financial hardship that these eligible employees may experience."  The Plan states that it is "unfunded, has no trustee, and is administered by the Plan Administrator." The Plan also states that it is intended to be a "employee welfare benefit plan" within the meaning of ERISA.

57.    Under the coverage section, it states that the plan "covers all regular, active, full-time salaried and hourly employees, other than those subject to a collective bargaining agreement or those who have an individual employment contract that contains a severance pay provision."

58.    Under the eligibility section, it provides that an employee is eligible if their employment is terminated involuntarily in a reduction in force and if the employee signs a release and waiver.

-9-

59.    The Smiths Plan provides that Vice Presidents and Department Heads shall receive a minimum severance benefit of twenty-six weeks base pay up to a maximum of 52 weeks..

60.    The Smiths Plan provides that such employees shall also receive four weeks of base bay for each $10,000 of base salary.

61.    Bonnell received $160,000 in 2009 which, assuming he was covered and eligible under the plan, would have entitled him to 64 weeks of pay (subject to the cap of 52 weeks).

62.    The Plan states it purports to provide certain rights and protections under the Employee Retirement Income Security Act of 1974 ("ERISA").

63.    Each of the severance pay plans or policies of the Company Defendants purport to have a claims procedure whereby an former employee can file a claim for benefits and have it reviewed by an plan administrator. The former employee can then appeal such a decision to the same individual for a final determination.

64.    Once a former employee has filed a claim and appealed any such decision, the person is deemed to have exhausted their administrative remedy under the severance pay plan or policies of the Company Defendants.

**BONNELL EXHAUSTS ADMINISTRATIVE REMEDIES**

65.    After Bonnell's termination, employees of the Company Defendants treated the six month's provision in Bonnell's offer letter as offering "continuation pay" and not severance pay.

66.    In or around June 2009, after being notified of his termination of employment, Bonnell requested that he received severance benefits from the Plan Defendants.

67.    Each of the Plan Defendants denied Bonnell's request to participate in the severance pay plans concluding, among other reasons, that allowing Bonnell to participate would result in a "windfall" to him, despite the plain language of his offer letter.

68.    Bonnell timely appealed each decision by the Plan Defendants using the procedures available in such severance pay plans.

69.    After appeal, each of the Plan Defendants (and Company Defendants) denied Bonnell's request for severance pay benefits under the plans and denied his appeal.

70.    Bonnell has exhausted his administrative remedies under the plans by making a formal claim as required by the Plan and Company Defendants and pursuing all appellate review procedures as provided by the severance pay plans.

**COUNT I (ERISA - Severance Plan Benefits)**

71.    Paragraphs 1 through 70 are hereby incorporated by reference as fully alleged in this First Count.

72.    Each of the Company Defendant severance pay plans and the Plan Defendants constitutes the establishment of an employee benefits plan under ERISA. They are employee welfare benefit plans within the meaning of ERISA, 29 U.S.C. §1002(1).

73.    The Defendants failed to comply with the terms of their respective severance pay plans by failing to treat Bonnell as an eligible employee for the severance benefits offered by the Plan.

74.    As a result, Bonnell has suffered economic harm and, is entitled to recover damages pursuant to 29 U.S.C. §§1132(a)(1)(B) and (a)(3).

**COUNT II (ERISA – Failure to Provide Documents)**

75.    Paragraph 1 through 70, are hereby incorporated by reference as if fully alleged in this Second Count.

76.    On or about July 9, 2009, Bonnell – through counsel – requested of the severance pay plans of the Company Defendants that he be provided with copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description, and a summary of the plan's annual financial report.

77.    On or about July 24, 2009, the Company Defendants – through counsel – responded to the request but failed to provide a copy of the latest annual report for the severance pay plans or any summary of the plan's annual financial report.

78.    The Company Defendants' and their severance pay plans collective failure to provide such information continues to the present date.

79.    Pursuant to 29 U.S.C. § 1132(a)(1)(A) and (c), the Company Defendants' and their severance pay plans have failed to comply with a request for information within 30 days after such a request.

80.    Bonnell is entitled to an award of $100 per day per Company Defendant for their collective failures to provide such information and such other relief as the court deems proper.

**COUNT III (Promissory Estoppel)**

81.    Paragraphs 1 through 70, are hereby incorporated by reference as if fully alleged in this Third Count.

82.    The representations by Burns and the Company Defendants regarding Bonnell's continued eligibility in any severance pay plan of the Company Defendants were promises that were clear and definite.

83.    Such promises could reasonably expect to induce action on Bonnell, namely acceptance of the Company Defendants' offer of employment.

84.    Such promises did induce action on Bonnell, namely his acceptance of the Company Defendants' offer of employment.

85.    When Bonnell was determined by the severance pay plans to not be eligible to participate, Bonnell has been injured by the broken promises made by the Company Defendants.

**COUNT IV (Negligent Misrepresentation)**

86.    Paragraphs 1 through 70, are hereby incorporated by reference as if fully alleged in this Fourth Count.

87.    The representations by Burns and the Company Defendants regarding Bonnell's continued eligibility in any severance pay plans of the Company Defendants were false statements of fact.

88.    The Company Defendants knew or should have known that such statements were untrue at the time that they were made.

89.    The statements were made to induce Bonnell to act, namely to accept the Company Defendants' offer of employment.

90.    Bonnell did, in fact, rely on such representations to his detriment, when the severance pay plans of the Company Defendants determined that Bonnell was not eligible to participate in such plans.

WHEREFORE, Bonnell requests that this Court assume jurisdiction over this matter; and

a. Award Plaintiff monetary damages;

b. Award Plaintiff both prejudgment and post-judgment interest;

c. Declare Plaintiff's rights under the severance pay plans of the Company Defendants;

d. Award Plaintiff benefits owed him under the Company Defendants' severance pay plans;

e. Award Plaintiff his attorney's fees and costs; and

f. Order such other legal or equitable relief to which Plaintiff may be entitled.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a trial by jury on all claims which may be tried to a jury.

The PLAINTIFF,

STEVEN BONNELL

By: _____

Daniel A. Schwartz/
Pullman & Comley, LLC
90 State House Square
Hartford, CT  06103-3702
Telephone 860 424 4300
Facsimile 860 424 4370
E-mail:  dschwartz@pullcom.com
His Attorneys

## CERTIFICATION

I hereby certify that on March 9, 2010 a copy of foregoing COMPLAINT was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Daniel A. Schwartz/
Pullman & Comley, LLC
90 State House Square
Hartford, CT  06103-3702
Telephone:  860 424 4300
Facsimile: 860 424 4370
E-mail:  dschwartz@pullcom.com

ACTIVE/73186.1/DSCHWARTZ/2056628v1